## M. H. LAUCHEIMER & SONS v. J. R. SAUNDERS.

### Decided October 12, 1898.

**1. Homestead—Urban, and Rural.**

No one can have an urban and a rural homestead at the same time; but whether the exemption can include a farm lying beyond the corporate limits, after the part on which the residence stands has become included as a block in the limits of a town, depends upon all the facts bearing on connection, surroundings, and use.

**2. Same.**

See opinion for facts in regard to the relations of the residence property within a town and an adjacent farm, held not to support a finding that the entire farm was exempt as homestead, and requiring that the facts be further developed by evidence.

APPEAL from Coryell. Tried below before Hon. J. S. STRAUGHAN.

*T. F. Bryan,* for appellants.

*Alexander & Atkinson* and *McDowell & Sadler,* for appellee.

KEY, ASSOCIATE JUSTICE.—This is an injunction suit brought by appellee to restrain appellants from causing an execution sale of a tract of land claimed by appellee as part of his homestead. After hearing the testimony, the court, trying the case without a jury, perpetuated the preliminary injunction, and the defendants have appealed.

The testimony is as follows: "The plaintiff, J. R. Saunders, being sworn, testified that he is the head of a family, said family consisting of himself, an unmarried daughter, and three minor sons; that in the year 1859 he purchased the tract of land upon which his present residence is situated; that said tract of land consists of about nine acres; that said land is now platted on the town plat of Gatesville as block No. 61; that he has continued to reside on said block of land from the time of the purchase, in 1859, down to the present; that the improvements on said land when he bought it were similar in quantity to those that are on it now, the chief difference being in the quality of improvements, the present improvements being more valuable than those that were on the land when he bought it; but that when he bought this land, there were on it a residence, cribs, horse and cow lots, garden, etc., as it has now; that it was fenced as it is now, except that he has cut off by a cross fence one

residence lot, on which he had a house built, and which is occupied by tenants who worked his farm; that he and the owner of the lot immediately east of him opened up an alley between them for their own convenience; that where he now lives was the nucleus of the residence portion of the village of Gatesville; that there were several residences near him, two or three west of him between him and the river, and three or four east of him between him and the public square of Gatesville; that said land is bounded and abutted on the south by what is now Main Street, but which was North Street or a road at the time of his purchase; that said land is bounded on the north by Stillhouse Branch, and that the north line of his fence is south of said Stillhouse Branch; that at the time and two or three years before he purchased this place he was a merchant in the town of Gatesville, doing business in a rented house; that he has ever since pursued the business of merchandising; that he is now president of the City National Bank of Gatesville; that in 1859 the population of Gatesville was some 300 or 400 souls.

"That in December, 1868, he purchased the 100 acres of land in controversy; that when he bought this 100 acres it was not all cleared and in cultivation, but that he has since had the balance of it cleared and put in cultivation; that it is bounded on the west by the Leon River and on the south by Stillhouse Branch, which branch is now and has been since the incorporation of the town of Gatesville the corporation limit of said town in that direction. That the town of Gatesville was incorporated some time between the years 1870 and 1873; that said 100-acre farm is fenced off separate and apart from the block of land on which his residence is situated; that the south line of fence on said 100 acres is on the north bank of said Stillhouse Branch; that there is no house on said land now, but that at one time there was a tenant house on it; that at the time of purchasing said 100 acres he was doing a general merchandising business in business house of his own; said business house was on lot No. 5 in block 5, as platted on the plat of Gatesville, and that he has continued to do business in said house ever since he first occupied it until shortly before the levy herein; that he worked some on said farm in the years 1872 and 1873, but that his principal business at that time was merchandising; that he has always had said farm cultivated by tenants and hired labor; that he did not remember whether or not he favored the incorporation of the town of Gatesville at the time it was incorporated, but that he knew that he offered no objection or opposition to it; that he has always taken active interest in the affairs of the town and has served several terms as alderman of same; that he has owned other farms in Coryell County and that he received rents from them, just as he did from the 100 acres in controversy; that he never at any time lived on said 100 acres.

"The witness J. R. Saunders also testified, that two days before the levy of the writ herein his bank and he had become insolvent, and that all of his property save that used by him as his homestead had been surrendered by him to his creditors. He further stated that the two tracts of land containing nine acres and 100 acres respectively had been

claimed, occupied, and used as his homestead since they were respectively bought by him, and that he had never had any other homestead. He further testified that his land had never been cut up into lots or blocks, and that the mapping and platting of his nine acres as block 61 was done without his knowledge or consent.

"D. A. Hammack, being sworn, testified that Coryell County was organized and Gatesville made the county seat of said county in March, 1854; that at the time Gatesville was made the county seat of Coryell County, the Commissioners Court of said county had four streets surveyed and opened up, one, North Street, beginning at the public square and running west to the Leon River; another beginning at the public square and running east to the graveyard; another beginning at the public square and running south to the Leon River; another beginning at the public square and running north to Stillhouse Branch; that the survey of land on which the town of Gatesville is located originally belonged to one R. G. Grant; that said Grant cut up and sold to different parties near to and adjoining the Saunders nine-acre block, lots of one, two, three, etc., acres, as they wanted them, on which they built houses and made themselves homes, and that these houses were occupied in 1859, when J. R. Saunders bought said nine-acre block; that he is a surveyor by occupation, and that when the town of Gatesville was incorporated, some time between 1870 and 1873, he ran the north boundary line of said town; that he began said line on the Leon River, beginning at the mouth of Stillhouse Branch, and running up said branch with its meanderings to a point just north of S. B. Raby's residence, said point being just east of where the Cotton Belt Railway depot now stands. Witness was here shown a plat, which he identified as the plat of Gatesville, drafted by him for the city council of said town in about the year 1880; said plat showing Stillhouse Branch to be the north boundary line of Gatesville, and the Leon River to be the west boundary line of said town. Witness pointed out the J. R. Saunders residence lot as lot No. 61 on said plat, and stated that said lot is bounded on the south by Main Street, as shown on said plat, and stated further that Main Street on said plat was called North Street when Gatesville was first established and when Saunders bought said land; that said lot is bounded on the north by Stillhouse Branch. He further pointed out and located the 100-acre farm as adjoining said plat on the north.

"Witness testified further that he knew the 100-acre farm in controversy; that J. R. Saunders had used it as a homestead, but that he had never lived on it or worked it himself, but had always rented it; that said Saunders had lived on the lot which is now platted as lot No. 61 in Gatesville ever since he bought it in 1859; that said Saunders has been a merchant in the town of Gatesville since about the year 1856, and a banker since 1883.

"Plaintiff offered in evidence the minutes of the Commissioners Court of Coryell County for the year 1854, showing the original plat of the town

of Gatesville, a copy of which plat is attached to and made a part of this statement of facts; said plat is designated as 'Plat of Gatesville in 1854.'

"Defendants offered in evidence the plat of Gatesville as it was in 1880 and as it is at present, a copy of which plat from the public square west to the Leon River, the western boundary, and north to Stillhouse Branch, the northern boundary of said town, is attached to and made a part of this statement of facts; said plat is designated as 'Plat of Gatesville at present.'

"Defendants offered in evidence the description of the Saunders residence lot in the deed to J. R. Saunders, which is as follows: 'All that certain lot or parcel of land lying and being situated in said county, beginning at a rock mound, 11 chains, 10 links from the public square in the town of Gatesville, on North Street; thence W. along said street or road 6 chains 50 links to a rock mound; thence N. 5 chains 50 links, a rock mound; thence W. 4 chains 50 links, a stake; thence N. 3 chains 75 links, a stake in Stillhouse Branch; thence up said branch with its meanderings to a point due north from the place of beginning, a stake, thence S. to the place of beginning, containing nine acres, more or less.' This deed recites a consideration of $300. They next offered in evidence a portion of the description of the 100-acre farm in controversy in the deed to J. R. Saunders, which is as follows: One hundred acres to be surveyed off the south side of the following tract of land, bounded and abutted as follows: Lying and being in the county of Coryell, on the Leon River, adjoining the town of Gatesville on the north, being a part of the C. Cazenoba survey, beginning at a stake on the east bank of the Leon River at the mouth of Stillhouse Branch, near the town of Gatesville, thence up said branch with its meanderings to the S. W. corner of a survey in the name of B. W. Hammack."

PLAT OF GATESVILLE IN 1854.

PLAT OF GATESVILLE AT PRESENT.

*Opinion.*—The trial court filed no conclusions of fact and law, but evidently must have held that the nine-acre tract upon which appellee resides was not in the town of Gatesville, but was part of appellee's rural homestead; because if appellee resided in the town, his homestead could not embrace the 100 acres of land in controversy, which is not in the town. No one can have an urban and a rural homestead at the same time.

Without commenting in detail upon the testimony, we have reached the conclusion that the judgment should not be permitted to stand, upon the evidence contained in the record, and we reverse and remand the cause in order that the facts may be more fully developed.

Upon another trial it is suggested that the following additional facts be shown: The locality of appellee's residence and other buildings on the nine-acre block; whether or not the residence is on level, high, or low ground,—in plain view or out of sight from the street in front of the courthouse, and whether or not said premises are easily accessible; the distance of the residence from the street running south of the block; whether or not the principal entrance is on said street; the exact distance from the residence to the public square; the locality in the town where the principal business houses are situated; whether or not the lots south and southeast of the nine-acre block, between Main and Leon streets, are improved and occupied, and the character of such occupancy,—whether for residence or business, and that the same character of proof be made with reference to the lots lying north and northwest of the public square; the number of residences adjoining and their distances from the nine-acre block; the approximate number of houses within 300 yards of appellee's residence; the population of the entire town of Gatesville; and the comparative importance of Main Street, whether or not it is one of the principal streets of the town—is traveled much or little.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*